UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| PHENIX MUTUAL FIRE INSURANCE COMPANY, )<br>    Plaintiff                                 )<br>                                              )<br>v.                                            )<br>                                              )<br>LIBERTY MUTUAL INSURANCE CORP.,     )<br>CARDI CORPORATION AND TARYN WILDE, )<br>    Defendant                                 )<br>                                              ) | C.A. No. |

**PRELIMINARY STATEMENT**

1. This is an action for declaratory relief, filed by plaintiff Phenix Mutual Fire Insurance Company ("Phenix") pursuant to the provisions of the Declaratory Judgments Act, 28 U.S.C. §2201, and Federal Rule of Civil Procedure 57.

2. This action for declaratory relief has been brought for the purposes of obtaining this Court's determination concerning the parties' respective rights and responsibilities under insurance policy no. 44.000688-70 (the "Phenix Policy") issued by Phenix to Xpress Sweeping Inc. ("Xpress"), as the Phenix Policy is or may be applicable to claims alleged against defendant Cardi Corporation ("Cardi") by defendant Taryn Wilde ("Wilde"), and concerning the parties' respective rights and responsibilities under insurance policy no. TB5-Z51-291 168-024 (the "Liberty Policy") issued by defendant Liberty Mutual Insurance Corp. ("Liberty") to Cardi, as the Liberty Policy is or may be applicable to claims alleged against Xpress, in the case of *Taryn Wilde* v. *Cardi Corporation, Garrity Asphalt Reclaiming, Inc. and Joanna L'Heureux, in her capacity as Finance Director for the City of Pawtucket* v. *Xpress Sweeping Inc.*, Providence County Superior Court No. PC-2017-3976 (the "*Wilde* Case").

3. Phenix has paid for 50% of the defense of Cardi with respect to all claims alleged against Cardi in the *Wilde* Case, subject to a reservation of rights with respect to the applicability of any indemnity obligations Xpress had or may have under the Phenix Policy as to certain of those claims.

4. An actual and justiciable controversy exists among the parties with respect to the interpretation of the Phenix Policy, and the availability of coverage under the Phenix Policy, concerning the following:

   (a) whether, at the time of the May 4, 2015 accident in Pawtucket, Rhode Island in which Wilde was allegedly injured (the "Accident"), Xpress had completed its operations on behalf of Cardi, such that Cardi is not entitled to coverage as an additional insured under the Phenix Policy;

   (b) whether, if Cardi is entitled to coverage as an additional insured under the Phenix Policy, Cardi is entitled only to such coverage in proportion to the degree of the negligence, if any, which is attributable to Xpress in causing the Accident;

   (c) whether, if Cardi is entitled to umbrella coverage as an additional insured under the Phenix Policy, Cardi is only entitled to such umbrella coverage as Cardi required Xpress to have in the Cardi Rental Agreement between Cardi and Xpress, or whether Cardi is entitled to all such umbrella coverage as was afforded by the Phenix Policy.

5. An actual and justiciable controversy also exists among the parties with respect to the interpretation of the Liberty Policy, and the availability of coverage under the Liberty Policy, concerning whether, at the time of the Accident, one or more employees of Xpress whom Cardi alleges were negligent and thereby caused the Accident were acting

in their capacity as borrowed servants of Cardi, such that they are entitled to a defense and indemnity from Liberty under the Liberty Policy.

## PARTIES

6. Phenix is a corporation duly organized under the laws of the State of New Hampshire and having a principal place of business in Concord, New Hampshire.

7. Upon information and belief, at all relevant times Liberty was a corporation duly organized under the laws of the Commonwealth of Massachusetts and having a principal place of business in Boston, Massachusetts.

8. Upon information and belief, at all relevant times Cardi was a corporation duly organized under the laws of the State of Rhode Island and having a principal place of business in Warwick, Rhode Island.

9. Upon information and belief, Wilde is a natural person and a resident of Pawtucket, Rhode Island.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §1332(a)(1), in that the matter in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and is between citizens of different States.  The Court also has subject matter jurisdiction over this action, pursuant to 28 U.S.C. §2201, in that there is an actual controversy as to which Phenix seeks a judicial declaration of its rights and obligations.

11. Venue is proper in this Court, pursuant to 28 U.S.C. §1391(a)(2), in that a substantial part of the events or omissions giving rise to the claims alleged in the *Wilde* Case occurred

and/or the site of the Accident that was the subject of the *Wilde* Case are located in this judicial district.

## FACTS COMMON TO ALL CLAIMS

## THE PHENIX POLICY

12. The Phenix Policy contained, in relevant part, the following terms, conditions, provisions and exclusions:

### COMMON POLICY DECLARATIONS

…

| | |
|---|---|
| XPRESS SWEEPING INC.<br>6 CRUDALE DR<br>WEST WARWICK RI 02893 | **POLICY PERIOD**<br>From 11/18/2014 To 11/18/2015 |

…

*See* IL 7000 (01/87)        PAGE 01 OF 01

…

### Commercial General Liability Coverage Form
### Declarations Page

**Summary of Coverages**                                **Limits of Insurance**

**EACH OCCURRENCE LIMIT**                                              $1,000,000

**GENERAL AGGREGATE LIMIT**                                            $2,000,000
  **(OTHER THAN PRODUCTS-COMPLETED OPERATIONS)**

**PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT**   $2,000,000

…

CG 7000 (04-96)        PAGE 01 OF 02

…

**Additional Insured – Owners, Lessees Or Contractors -- Automatic Status When Required In Construction Agreement With You**   **CG 2033 (07-04)**

A. **Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you or such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by:

1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

A person or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

…

2. "Bodily injury" or "property damage" occurring after:

   **(a)** All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or

   **(b)** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

…

See **CG 2033 (07-04)**

…

**Commercial General Liability Coverage Form**

…

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  …

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   …

2. **Exclusions**

   …

   b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

   …

   **(2)** Assumed in a contract or agreement that is an "insured contract," provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purpose of liability assumed in an "insured contract," reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage," provided:

   (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

>   (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
>
>   …

*See* **CG 0001 (12-07), Pages 1-2 of 16.**

'"'

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

>   1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
>   …
>
>   **f.** Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.
>
>   **g.** All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limits of insurance.
>
>   These payments will not reduce the limits of insurance.
>
>   …

*See* **CG 0001 (12-07), Page 8 of 16.**

…

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

…

**4.     Other Insurance** If other valid and collectible insurance is available for a loss we cover under Coverages **A** or **B** of this Coverage Form, our obligations are limited as follows:
>   **a.**     Primary Insurance
>
>   This insurance is primary except when coverage **B.** applies.  If this insurance is primary, our obligations are not affected unless any of the

        other insurance is also primary.  Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

…

    **c.**    If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurers contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

        If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

…

**SECTION V – DEFINITIONS**

…

…

**3.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

…

**9.**    **"**Insured contract" means:

    …

    **f.**    That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

…

**12.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

…

**16.**    "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed competed at the earliest of the following times**:**

        **(a)** When all the work called for in your contract has been completed;

        **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site;

        **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

…

*See* **CG 0001 (12-07), Pages 11-15 of 16.**

…

**Commercial Umbrella Coverage Form Declarations Page**

**Schedule of Underlying Coverages**

| General Liability | Limit of Liability |
|---|---|
| EACH OCCURRENCE | $1,000,000 |
| AGGREGATE | $2,000,000 |

…

**Commercial Umbrella Coverage Form**

….

**SECTION I – COVERAGES**

**A. Insuring Agreement**

9

We will pay on behalf of the insured the "ultimate net loss":

**a.** In excess of the "underlying limit"; or

**b.** For an "occurrence" covered by this policy which is either excluded or not covered by the "underlying insurance";

Because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this Coverage Form applies, caused by an "occurrence" anywhere in the world.

…

### THE LIBERTY POLICY

13. The Liberty Policy contained, in relevant part, the following terms, conditions, provisions and exclusions:

    **COMMERCIAL GENERAL LIABILITY DECLARATIONS**
    **OCCURRENCE**

    **Issued By Liberty Mutual Insurance Corp.**
    **Policy Number TB5-Z51-291168-024**
    **Renewal of TB5-Z51-291168023**

    **Named Insured and Mailing Address**
    **Cardi Corporation**
    **400 Lincoln Avenue**
    **Warwick, RI 02888-3049**

    **Policy Period: The policy period is from 8/1/2014 to 8/1/2015 12:01 am standard time at the insured's mailing address.**

    …

    **LIMITS OF INSURANCE**

    | | |
    |---|---|
    | **Each Occurrence Limit** | **$1,000,000** |

    …

    | | |
    |---|---|
    | **Aggregate** | **$2,000,000** |

    …

    *See* **LC 00 04 08 12**                                                                 Page 1 of 1

…

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

…

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.   …

   …

*See* **CG 00 01 04 13**                                                                                      Page 1 of 16

…

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   …

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured.   …

…

**SECTION III – LIMITS OF INSURANCE**

…**4.   Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:
   a. Primary Insurance

      This insurance is primary except when Paragraph **b.** below applies.  If this insurance is primary, then our obligations are not affected unless any of the other insurance is also primary.

…

    **c. Method Of Sharing**

    If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

    If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit to the total applicable limits of insurance of all insurers.

…

**SECTION V – DEFINITIONS**

…

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

…

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

…

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*See* **CG 00 01 04 13**          **Pages 10, 12-13, 15 of 16.**

…

**THE CARDI EQUIPMENT RENTAL AGREEMENT**

14. On or about February 1, 2013, Cardi and Xpress entered into an agreement, whereby Xpress agreed to rent certain construction equipment to Cardi and to provide operators for such equipment to Cardi as necessary (the "Rental Agreement"). Cardi provided Xpress with written safety-related requirements for such operators who operated the

equipment rented to Cardi, to ensure that Xpress operators of the equipment rented to Cardi understood that their operation of such construction equipment was subject to the direction, supervision and/or control of Cardi. On or about February 26, 2014, Cardi and Xpress executed an "Addendum," extending the term of the Rental Agreement through 2014 and 2015.

15. The Rental Agreement provided, in relevant part, as follows:

    1. **INSURANCE.** Prior to the start of any of the Lessor's work or operations on the project, Lessor shall procure and maintain insurance in the amounts specified and shall maintain such amounts in force for the duration of such work and operations. Such insurance shall include, but not be limited to coverage that protects the Lessor, and the additional insureds named herein, from claims which arise out of relate to, result from, or occur in connection with the Lessor's operations and work on the project and for which the Lessor may be legally liable, whether such work and operations are performed by the Lessor or by anyone directly or indirectly employed by them, or by anyone for whose acts they may be directly or indirectly liable. The Lessor shall name Lessee as an additional insured under the Lessor's insurance policy, which policy shall include contractual liability coverage to ensure that the Lessor's obligations contained in the indemnity provision of the Agreement is performed. … The Lessor's insurance shall be primary and Lessee's insurance shall be secondary and non-contributory. – **See "ATTACHMENT B" for details pertaining to insurance requirements.**

    2. **INDEMNITY.** The Lessor agrees that to the fullest extent allowed by law, the Lessor shall defend, indemnify and hold harmless the Owner; the General Contractor; Lessee; all affiliates of the Lessee; and the agents, servants and employees of any of them from and against all claims, damages, losses, judgments, demands, actions and causes of action, costs, loss of service or consortium, expenses and compensation, including but not limited to attorney's fees, that arise from, relate to, result from or occur in connection with the performance of the Lessor's work or the operations of the Lessor or of its agents, servants and employees or lower tier lessor pursuant to the terms of this Agreement or by anyone for whose acts they may be directly or indirectly liable regardless of whether or not such claim, damage, loss, judgment, demand, action and cause of action, cost, loss of service or consortium, expense and compensation is caused in part by a party indemnified hereunder. The indemnification obligation of the Lessor under this section shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Lessor under workers' compensation, disability benefit, or any other employment related Acts.

…

"**ATTACHMENT B**" to the Cardi Rental Agreement provided, in relevant part, as follows:

**INSURANCE REQUIREMENTS – Equipment Lessor**

| Owner/Operators | Multiple Employees |
|---|---|
| **General Liability** | **General Liability** |
| $500,000 Each Occurrence | $1,000,000 Each Occurrence |
| $1,000,000 Aggregate | $2,000,000 Aggregate |
| … | |
| **Excess Liability** | **Excess Liability** |
| $1,000,000 Each Occurrence | $1,000,000 Each Occurrence |

…

16. Upon information and belief, Cardi entered into a construction contract with the City of Pawtucket to repave certain streets in Pawtucket (the "Contract") and began doing work pursuant to the Contract in 2013.

17. Cardi sub-contracted the milling work that was to be done under the Contract to Garrity Asphalt Reclaiming, Inc. ("Garrity").

18. Pursuant to the Cardi Rental Agreement, Xpress provided construction equipment and operators as needed to Cardi for Cardi's repaving work which was the subject of the Contract.

19. Xpress operators of construction equipment rented to Cardi pursuant to the Cardi Rental Agreement were subject to the written requirements for the safe operation of such

construction equipment provided to Cardi, and the Xpress employee(s) who operated that construction equipment did so under the direction, supervision and control of Cardi.

20. The Xpress employee(s) who operated the construction equipment rented to Cardi pursuant to the Cardi Rental Agreement were borrowed employees of Cardi, for whose negligence, if any, Cardi was legally responsible.

21. Although Xpress operated construction equipment on the street in the vicinity of the Accident on May 4, 2015, Xpress had completed all of its work and operations on behalf of Cardi and had left the area several hours prior to the Accident.

22. Xpress was not negligent in its work and operations performed on behalf of Cardi in the vicinity of the Accident on May 4, 2015 and/or its negligence, if any, did not cause Wilde's alleged injuries and damages.

## THE *WILDE* CASE

23. On or about May 4, 2015, while lawfully traveling on a sidewalk in the vicinity of a street that was in the process of being repaved pursuant to the Contract, Wilde was allegedly injured and caused to suffer damages as a result of the Accident.

24. Wilde filed the *Wilde* Case, alleging, *inter alia*, that she had been injured and caused to suffer damages as a result of the negligence of Cardi and/or Garrity with respect to one or both of them leaving debris from the roadway on the sidewalk on which she had been lawfully traveling.

25. Cardi subsequently tendered the defense of the *Wilde* Case to Phenix, which Phenix initially declined, but (jointly with the insurer for Garrity) later agreed to reimburse Cardi for 50% of its defense costs, subject to a reservation of Phenix's rights with respect to indemnity under the Phenix Policy.

## COUNT I
### (Declaratory Judgment – Cardi, Liberty and Wilde)

26. Phenix repeats and realleges Paragraphs 1 through 25 above and incorporates them by reference as if they were fully set forth herein.

27. On the date of the Accident, Xpress had already finished its work and operations on behalf of Cardi in the vicinity of the Accident and had already left the area several hours earlier, such that Wilde's alleged injures and damages did not relate to, result from or occur in connection with Xpress' work or operations.

28. Any damages awarded to Wilde against Cardi in the *Wilde* Case which do not relate to, result from or occur in connection with Xpress' work or operations are not covered by the Phenix Policy.

29. Phenix has no duty to indemnify Cardi and/or Liberty with respect to that portion of any judgment in the *Wilde* Case attributable to the damages which may be awarded to Wilde for her claims against Cardi which do not relate to, result from or occur in connection with Xpress' work or operations.

30. WHEREFORE, Phenix demands judgment against Cardi, Liberty and Wilde declaring that the Phenix Policy does not afford coverage with respect to that portion of any judgment in the *Wilde* Case attributable to the damages may be awarded to Wilde against Cardi which do not relate to, result from or occur in connection with Xpress' work or operations on behalf of Cardi.

## COUNT II
### (Declaratory Judgment – Cardi, Liberty and Wilde)

31. Phenix repeats and realleges Paragraphs 1 through 25 above and incorporates them by reference as if they were fully set forth herein.

32. To the extent that the jury in the *Wilde* Case finds that Wilde's alleged injuries and damages were caused by the negligence of Cardi, Cardi is not entitled to coverage under the Phenix Policy if the jury also determines that Xpress was not negligent in the performance of its work and operations in the vicinity of the Accident on May 4, 2015 on behalf of Cardi and/or if the jury determines that Wilde's alleged injuries and damages were not caused by the negligence of Xpress.

33. There is no coverage under the Phenix policy for Cardi with respect to damages which may be awarded to Wilde against Cardi if Xpress was not negligent in the performance of its work and operations in the vicinity of the Accident on May 4, 2015 and/or if Wilde's alleged injuries were not caused by the negligence of Xpress.

34. To the extent that the jury finds in the *Wilde* Case that Wilde's alleged injuries and damages were caused by the negligence of Cardi, Cardi has no right to recover from Xpress and/or Cardi and Liberty have no right to coverage under the Phenix policy, with respect to that portion of such damages awarded Wilde against Cardi which are attributable to Cardi's own negligence.

35. Xpress has no duty to indemnify Cardi and/or Phenix has no duty to afford coverage under the Phenix Policy, with respect to that portion of any judgment in the *Wilde* Case as to which the jury finds that Wilde's alleged injuries and damages were caused by Cardi's negligence.

36. WHEREFORE, Phenix demands judgment against Cardi, Liberty and Wilde declaring that the Phenix Policy does not afford coverage with respect to that portion of any judgment attributable to the damages awarded Wilde against Cardi as to which the jury found that Wilde's alleged injuries and damages were caused by Cardi's negligence.

## COUNT III
### (Declaratory Judgement – Cardi, Liberty and Wilde)

37. Phenix repeats and realleges Paragraphs 1 through 25 above and incorporates them by reference as if they were fully set forth herein.

38. The Cardi Rental Agreement only required Xpress to procure and maintain $1,000,0000 in umbrella insurance coverage.

39. Although Xpress procured and maintained $5,000,000 in umbrella insurance coverage through Phenix, Cardi is not entitled to umbrella insurance coverage in excess of that which Cardi contractually required Xpress to procure and maintain.

40. Cardi and Liberty are not entitled to umbrella insurance coverage afforded under the Phenix Policy in excess of the amount of umbrella insurance coverage which Cardi contractually required Xpress to procure and maintain, *i.e.*, $1,000,000.

41. Cardi and Liberty are not entitled to that portion of the Phenix Policy which affords umbrella insurance coverage in excess of $1,000, 000 in coverage.

42. Xpress has no duty to indemnify Cardi and/or Phenix has no duty to afford umbrella insurance coverage under the Phenix Policy in excess of $1,000,000 to Cardi and/or to Liberty for any damages which may be awarded Wilde against Cardi.

43. WHEREFORE, Phenix demands judgment against Cardi, Liberty and Wilde that the Phenix Policy does not afford umbrella insurance coverage to Cardi in excess of $1,000,000 for any damages which may be awarded Wilde against Cardi.

## COUNT IV
### (Declaratory Judgment – Liberty)

44. Phenix repeats and realleges Paragraphs 1 through 25 above and incorporates them by reference as if they were fully set forth herein.

18

45. Xpress employees who operated construction equipment for Cardi pursuant to the Cardi Rental Agreement did so pursuant to the written requirements for the safe operation of construction equipment which Xpress provided to Cardi, and the Xpress employee(s) who operated such construction equipment did so under the direction, supervision and control of Cardi.

46. The Xpress employee(s) who operated the construction equipment pursuant to the Cardi Rental Agreement were borrowed employees of Cardi, for whose negligence, if any, Cardi was legally responsible.

47. If any Xpress employee(s) who operated the construction equipment pursuant to the Cardi Agreement was/were negligent in their work and operations on behalf of Cardi in the vicinity of the Accident on May 4, 2015, or if such negligence, if any, caused Wilde's alleged injuries and damages, either/both of which Xpress herein expressly denies, then Cardi is liable for such negligence of Xpress' employee(s).

48. Liberty, which afforded general liability insurance to Cardi under the Liberty Policy, is required to indemnify Xpress with respect to any judgment entered against Xpress in the *Wilde* Case.

49. WHEREFORE, Phenix demands judgment against Liberty declaring that Liberty must indemnify Xpress for any judgment for damages entered against Xpress in the *Wilde* Case.

### **PRAYERS FOR RELIEF**

WHEREFORE, Phenix prays for the following relief:

1. A declaration binding on all parties that Phenix has no obligation under the Phenix Policy to pay that portion of any judgment in the *Wilde* Case awarded to Wilde

against Cardi which does not relate to, result from or occur in connection with Xpress' work or operations;

2. A declaration binding on all parties that Phenix has no obligation under the Phenix Policy to pay that portion of any judgment awarded Wilde against Cardi as to which the jury finds that Xpress was not negligent in the performance of its work and operations on behalf of Cardi in the vicinity of the Accident on May 4, 2015 and/or as to which Wilde's injuries and damages were not caused by Xpress' negligence;

3. A declaration binding on all parties that Phenix has no obligation under its umbrella insurance coverage to afford coverage to Cardi under the Phenix Policy in excess of $1,000,000;

4. A declaration binding upon Liberty that Xpress' employees were borrowed employees of Cardi, such that any negligence of Xpress which caused Wilde's alleged injuries and damages was attributable to Cardi, such that Liberty is under a duty to indemnify Xpress for any portion of any judgment entered against Xpress.

5. Such other and further relief as this Court should deem appropriate.

By its attorneys,

*/s/ Chase H. Kennedy*

_____
Chase H. Kennedy (RI bar #9660)
ckennedy@murphyriley.com
Murphy & Riley, P.C.
10 Dorrance Street
Providence, RI 02903
(401) 519-3835